UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| E.B., *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>   *Defendant*. | No. 24-cv-663 (DLF) |

**MEMORANDUM OPINION**

  Cheryl Boyce and her minor child, E.B., bring this action against the District of Columbia under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et seq.*, challenging a hearing officer's decision to deny E.B. a prospective placement at a private school and seeking tuition reimbursement. Compl. at 1–2, Dkt. 1. Before the Court is the plaintiffs' Motion for Summary Judgment, Pls.' Mot., Dkt. 10, and the defendant's Cross-Motion for Summary Judgment, Def.'s Mot., Dkt. 12. For the reasons that follow, the Court will grant in part and deny in part the plaintiffs' motion and grant in part and deny in part the defendant's motion.

**I. BACKGROUND**

  **A. Statutory Framework**

  Under the IDEA, "every child with a disability in this country is entitled to a 'free appropriate public education,' or FAPE." *Leggett v. District of Columbia*, 793 F.3d 59, 62 (D.C. Cir. 2015) (quoting 20 U.S.C. § 1400(d)(1)(A)). For students with disabilities, public school officials must "develop a comprehensive strategy, known as an 'individualized education program,' or IEP, tailored to the student's unique needs." *Id.* at 63 (quoting 20 U.S.C.

§ 1414(d)(1)(A)). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

Parents with either substantive or procedural complaints about a school's "'identification, evaluation or educational placement' of their child or [about] its 'provision of a free appropriate public education [(FAPE)]' may request a due-process hearing." *Davis v. District of Columbia*, 244 F. Supp. 3d 27, 32 (D.D.C. 2017) (quoting 20 U.S.C. § 1415(b)(6)). At this hearing, parents are entitled to have counsel accompany and advise them, to present evidence, to cross-examine witnesses, and to receive a written decision from the hearing officer. 20 U.S.C. § 1415(h). Parents may then bring a civil action in state or federal court for judicial review of the hearing officer's decision. *Id.* § 1415(i)(2)(A). The IDEA also contains a "stay put" provision, which provides that during the pendency of any of these proceedings, the student must remain in his or her current educational placement unless otherwise agreed. *See id.* § 1415(j).

The IDEA allows courts to "grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C)(iii). "Under this provision, equitable considerations are relevant in fashioning relief and the court enjoys broad discretion in so doing." *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 16 (1993) (citation modified). "If a school system fails to provide a student with an appropriate education and such education is offered at a private school, the school system may be liable to reimburse the student for the cost of private education." *Z. B. v. District of Columbia*, 888 F.3d 515, 519 (D.C. Cir. 2018). In addition to "retrospective relief designed to compensate for *yesterday's* IDEA violations," a school may be obligated to pay for "prospective relief aimed at ensuring that the child receives *tomorrow* the education required by

IDEA." *Branham v. Gov't of the District of Columbia*, 427 F.3d 7, 11 (D.C. Cir. 2005).

**B.     Factual Background**

E.B. is a fourteen-year-old student at the Lab School of Washington (the Lab School). Admin. Rec. (AR) at 4, 242, Dkt. 9-1.  In June 2019, when E.B. was in the second grade, the District of Columbia Public Schools (DCPS) found her eligible for special education and related services as a student with an Other Health Impairment for ADHD, and it developed an initial IEP for E.B.  AR 37–38.  In February 2020, when E.B. was in the third grade, DCPS formulated another IEP.  AR 76–77.  Boyce disagreed with the February 2020 IEP, withdrew E.B. from DCPS, and unilaterally placed E.B. at the Lab School, which she has attended since the 2020–2021 school year.  AR 242.

In a May 2021 due-process hearing, Hearing Officer Michael Lazan agreed with C.B. that DCPS's February 2020 IEP denied E.B. a FAPE.  AR 187.  Accordingly, Lazan ordered DCPS to pay for E.B.'s attendance at the Lab School for the 2020–2021 school year and for 228 hours of academic tutoring.  AR 194.

In February 2021, DCPS proposed yet another IEP and placement in the public-school system for the 2021–2022 school year.  AR 198.  C.B. filed a due-process complaint.  AR 197.  In a September 2021 determination, Hearing Officer Terry Banks ordered DCPS to continue funding E.B.'s placement at the Lab School, which he found to be an appropriate educational placement, during the pendency of C.B.'s challenge to the IEP.  AR 203.  C.B. withdrew her complaint after reaching a settlement for that school year.  AR 204.

DCPS proposed its fourth IEP in January 2022.  AR 207.  C.B. followed with another due-process complaint.  AR 293.  In a November 2022 determination, hearing Officer Peter Vaden held that the January 2022 IEP, which would return E.B. to the public-school system, denied E.B.

a FAPE.  *Id.*  As for relief, Vaden found that the Lab School was an appropriate prospective placement for E.B after analyzing the factors established by the D.C. Circuit in *Branham v. Government of the District of Columbia*, 427 F.3d at 12.  AR 290, 293.  Vaden found (1) that E.B. had a diagnosis for ADHD, "Language Disorder/Mixed Receptive-Expressive Language Disorder[,] and Specific Learning Disorder with Impairment in Reading" and (2) that E.B. "required a classroom environment that offered, *inter alia*, high levels of structure, predictability, and routine, opportunities for 'hands-on'/experiential learning[]; specialized instruction in reading, . . . and speech and language therapy."  AR 291.

As to the Lab School's services, Vaden found (3) that the Lab School offers "small class size for all classes and, for [E.B.], daily intensive . . . specialized reading instruction."  AR 291–92.  Vaden excluded DCPS's evidence that the Lab School "was not appropriate for [E.B.] because of the school's alleged failure to meet [Office of State Superintendent of Education (OSSE)] staffing and program requirements" because the Lab School "holds a current [Certificate of Approval (COA)] from [the Office of The State Superintendent of Education (OSSE)] to enroll students with [E.B.'s] disabilities and it is not the place of this hearing officer to review the standards used by OSSE in its private schools approval process."  AR 292.  Vaden further found (4) that the annual tuition at the Lab School is not "out of line with other OSSE-approved day schools for students with similar disabilities" and (5) that the Lab School may not have been the least restrictive environment but the IDEA's "primary goal of providing disabled students with an appropriate education" took precedence.  AR 292–93 (citation modified).  Accordingly, Vaden ordered DCPS to "fund [E.B.'s] covered private school enrollment expenses at [the Lab School], not yet paid, . . . for the reminder of the [Lab School's] 2022–2023 regular school year."  AR 294.

4

In May 2023, DCPS proposed its fifth IEP. AR 5. And C.B., again dissatisfied with the proposed accommodations at a public school, filed her fourth due-process complaint. AR 4. Banks—the hearing officer from the September 2021 order—presided over a three-day hearing. AR 6. In a February 2024 determination, Banks found that DCPS's May 2023 IEP would deny E.B. a FAPE. AR 12. But, as to remedies, Banks "respectfully disagree[d]" with Vaden. AR 13. He found that the Lab School was not an appropriate prospective placement because—and only because—C.B. had "failed to meet her burden of proving that [the Lab School] meets the third *Branham* requirement, a link between the intensive level of special education support which [E.B.] needs for most classes, and the services offered by [the Lab School].'" AR 14 (citation modified). After reading *Branham* to require "special education" as defined under the IDEA, Banks concluded that a teacher "cannot be deemed to be providing special education services" if the "teacher does not meet a jurisdiction's minimum qualifications to be a special education teacher." AR 14. And Banks found that the Lab School "does not require its teachers to meet the certification requirements of the District" and that "only a small fraction of [E.B.'s] teachers at [the Lab School] holds credentials to teach special education students." AR 13. He thus concluded that, "while [the Lab School] serves students with disabilities, it provides specialized instruction in only a small fraction of its classes" and accordingly denied the plaintiffs' request for prospective placement at the school for the 2023–2024 school year. AR 14.

Banks also denied C.B.'s request for reimbursement for expenses arising from E.B.'s attendance at the Lab School's 2023 summer program because C.B. had presented "no evidence that [the Lab School's] summer program mirrors DCPS' [summer] program" as prescribed in E.B.'s IEP. *Id.* His only remedy was to order the school district to issue a revised IEP. *Id.*

### C. Procedural History

The plaintiffs filed this suit challenging Banks's determination in March 2024. Compl. at 1. The plaintiffs moved for summary judgment in September 2024, Pls.' Mot., and the defendant cross-moved in November 2024, Def.'s Mot.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that could affect the outcome of the lawsuit. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In an IDEA suit, "judicial review of an administrative agency's decision by way of summary judgment motion . . . is not a true summary judgment procedure." *Lopez-Young v. District of Columbia*, 211 F. Supp. 3d 42, 50 (D.D.C. 2016) (citation modified). "Instead, the district court essentially conducts a bench trial based on a stipulated record." *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (citation modified); *see also Smith v. District of Columbia*, 846 F. Supp. 2d 197, 200 (D.D.C. 2012) (explaining that court review in the IDEA context is like "review of an administrative decision"). When "no additional evidence

is introduced in a civil suit seeking review" of a hearing officer's determination, "a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *Brown v. District of Columbia*, 568 F. Supp. 2d 44, 50 (D.D.C. 2008). "The party challenging the administrative determination 'takes on the burden of persuading the court that the hearing officer was wrong.'" *Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 129 (D.D.C. 2018) (citation modified) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)). The court bases "its decision on the preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(C)(iii).

The court must give "due weight" to the hearing officer's determination and "may not substitute its own notions of sound educational policy for those of the school authorities." *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 35–36 (D.D.C. 2013) (citation modified). But "[j]udicial review under IDEA is more rigorous than in typical agency cases." *N.G. v. District of Columbia*, 556 F. Supp. 2d 11, 18 (D.D.C. 2008) (citing *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005)). "[A] hearing decision without reasoned and specific findings deserves little deference," *Reid*, 401 F.3d at 521 (citation modified), and in such a case, a "district court may determine that the appropriate relief is a remand to the hearing officer for further proceedings," *id.* at 526 (citation modified).

### III.   ANALYSIS

The parties do not contest Banks's finding that the May 2023 IEP denied E.B. a FAPE. But the plaintiffs argue that Banks erred by (1) denying E.B. a prospective placement at the Lab School and (2) denying reimbursement of "residual" tuition expenses not already covered under the IDEA's stay-put provision. Pls.' Mot. at 20–21. For the reasons that follow, the Court agrees with the plaintiffs that Banks erred by denying E.B. a prospective placement at the Lab School based on the certification status of E.B.'s teachers. But the Court denies plaintiffs' request for

"any residual tuition reimbursement" for unspecified costs not covered under the IDEA's "stay-put" provision because the plaintiffs offer no evidence of such costs.

A.     **Prospective Placement**

The Court first considers whether Banks erred in determining that the Lab School was not an appropriate prospective placement for E.B. in the 2023–2024 school year.

Under the IDEA, hearing officers and courts may award prospective placements as an equitable remedy. *Branham*, 427 F.3d at 11. In *Branham*, the D.C. Circuit identified factors relevant to ordering a prospective placement: (1) "the nature and severity of the student's disability"; (2) "the student's specialized educational needs"; (3) "the link between those needs and the services offered by the private school"; (4) "the placement's cost"; and (5) "the extent to which the placement represents the least restrictive educational environment." *Id.* at 12 (citation modified). Moreover, the "D.C. Circuit has also affirmed a prospective placement award [under the IDEA's predecessor statute] without reference to any particular factors in a case in which the district court found that the placement was 'the best . . . offered by either DCPS or the parents' and was, therefore, 'the only program supported by any evidence in the record.'" *Q.C-C. v. District of Columbia*, 164 F. Supp. 3d 35, 47 (D.D.C. 2016) (quoting *McKenzie v. Smith*, 771 F.2d 1527, 1535 (D.C. Cir. 1985)).

Two hearing officers reached different determinations as to E.B.'s prospective placement at the Lab School despite applying the same *Branham* factors to a similar record. As described *supra*, in November 2022, Vaden found that the Lab School was an appropriate prospective placement for E.B after analyzing the five factors identified in *Branham*. AR 290–93. But in his February 2024 determination, Banks "respectfully disagree[d]" with one factor in Vaden's *Branham* analysis. AR 13. In Banks's view, the third *Branham* factor required the Lab School to

8

offer a "special education" as defined under the IDEA. AR 13. Under that standard, Banks reasoned that a teacher "cannot be deemed to be providing special education services" if the "teacher does not meet a jurisdiction's minimum qualifications to be a special education teacher." AR 14. Because Banks found that "only a small fraction of [E.B.'s] teachers at [the Lab School] holds credentials to teach special education students," AR 13, he concluded that the Lab School offered "specialized instruction in only a small fraction of its classes," AR 14. Accordingly, Banks denied E.B. a prospective placement at the Lab School without considering any of the other *Branham* factors or Vaden's earlier finding that the Lab School satisfied those factors.

Banks committed an error of law in applying the third *Branham* factor. He reasoned that the Lab School is "incapable of providing [special education] services[] because it does not require its teachers to meet the certification requirements of the District." AR 13. But that principle finds no support in the IDEA or this Circuit's caselaw. "[T]he IDEA does not define 'special education' to include only education by certified special education teachers, but rather encompasses a broader range of instruction." *Q.C-C.*, 164 F. Supp. 3d at 51. The statute defines "special education" to mean "specially designed instruction . . . to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29). The Department of Education has further defined "specially designed instruction" without reference to a teacher's certifications. *See* 34 C.F.R. § 300.39(b)(3); *Q.C-C.*, 164 F. Supp. 3d at 51. Neither the defendant nor Banks disputes that the Lab School offers E.B. specially designed instruction to meet her needs. Banks's singular reason for denying E.B. prospective placement at the Lab School—the certification status of E.B.'s teachers for the 2023–2024 school year—thus lacks legal footing.[1]

---

[1] Banks's determination "is entitled to little, if any, deference on the issue presented, because it was premised on a misunderstanding of the law." *Q.C-C.*, 164 F. Supp. 3d at 49.

The defendant does not defend Banks's sweeping legal conclusion that non-certified teachers cannot offer special education services. *Compare* Def.'s Reply at 2, Dkt. 16 ("Plaintiffs paint the District's argument with too broad of a brush in stating that it believes that a teacher who does not meet the jurisdiction's qualifications to be a special education teacher cannot provide special education services."), *with* AR 14 ("If a child's teacher does not meet a jurisdiction's minimum qualifications to be a special education teacher, that individual cannot be deemed to be providing special education services."). But the defendant nevertheless maintains that Banks "did not abuse his discretion in denying Plaintiffs' request that he prospectively place E.B. at [the Lab School] as an equitable remedy." Def.'s Mot. at 8.

The defendant's argument for denying E.B. a prospective placement is no more convincing. The defendant fixes on a line in *Branham* that describes prospective private-school placement as a remedy "aimed at ensuring that the child receives *tomorrow* the education required by IDEA." 427 F.3d at 11; *see* Def.'s Mot. at 8–9; Def.'s Reply at 2. According to the defendant, the phrase "education required by IDEA" requires a private school to satisfy a separate set of regulations applicable to public schools—including teacher-certification requirements—to be eligible as a prospective placement. Def.'s Mot. at 8–10. But this reading of *Branham* fails.

First, prospective private-school placement is a function of the Court's remedial discretion under the IDEA—not a creature of its regulatory scheme for public schools. This is why the *Branham* Court followed its description of the purpose of prospective placements with "a set of considerations relevant to determining whether a particular placement is appropriate for a particular student." 427 F.3d at 11–12. Those factors, as listed *supra*, do not include compliance with regulations applicable to public schools, focusing instead on "the student's specialized educational needs, [and] the link between those needs and the services offered by the private

10

school." *Id.* at 12. And while the IDEA's regulatory goal of furnishing "the least restrictive educational environment" is relevant to whether a particular private school is appropriate under *Branham*, *id.*, there is no statutory support for an outcome-determinative focus on the certification status of teachers. In light of this remedial purpose, the D.C. Circuit has affirmed a district court's prospective private-school placement—even though it was "not the perfect program"—because "it was the best offered by either DCPS or the parents." *McKenzie*, 771 F.2d at 1535 (citation modified).

Second, even if private schools were subject IDEA regulations to qualify for prospective placement, the teacher-certification regulations identified by the defendant are explicitly limited to "each person employed as a *public school* special education teacher." 34 C.F.R. § 300.156(c)(1) (emphasis added). And, as explained *supra*, nothing in the IDEA's statutory definitions of "special education" requires a teacher obtain a state certification in order "to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29). The defendant's argument about teacher certification thus fails on its own terms.

Third, the Lab School holds a Certificate of Approval from the OSSE to serve special needs children. AR 10. Although the defendant points to the OSSE's remedial proceedings against the Lab School for teacher certifications in 2022, Defs.' Mot. at 10, the fact remains that the OSSE renewed the Lab School's Certificate of Approval in October 2023, AR 949. The Court will not revisit the OSSE's decision to authorize placement of disabled students at the Lab School despite a lack of certification among its teachers, nor have the parties asked it to do so.

Neither Banks nor the defendant identified any reason apart from their erroneous teacher-certification theories to deny E.B. a prospective placement at the Lab School for the 2023–2024 school year. To the contrary, Banks acknowledged Vaden's earlier determination that the Lab

School *was* an appropriate prospective placement for an earlier school year and "respectfully disagree[d]" as to the third *Branham* factor alone. AR 13. Because the parties do not present argument on the other factors, the Court will not independently analyze those factors in concluding that Banks's criterion for denying a prospective placement was legally flawed.

In fashioning a remedy for Banks's error, the Court recognizes that the 2023–2024 school year had passed by the filing of the motions for summary judgment in this case. The plaintiffs still ask, albeit without much clarity, for a "prospective placement at the Lab School." Pls.' Mot. at 20. To the extent that the plaintiffs ask this Court to grant a perpetual prospective placement— *i.e.*, for the remainder of E.B.'s time at the Lab School—the Court finds that the record is insufficient to support such relief at this time, seeing as the administrative record is now over twenty months out of date. The Court will instead grant the plaintiffs' motion as to prospective placement by holding that Banks erred in denying E.B. a prospective placement at the Lab School for the 2023–2024 school year based on teacher-certification status alone and that the plaintiffs are entitled to the benefits that would have attended such a prospective placement had it been timely granted.

### B.   Residual Tuition

The IDEA's "stay-put" provision requires that a "child shall remain in the then-current educational placement" during the pendency of proceedings under the statute. 20 U.S.C. § 1415(j). The parties appear to agree that this provision required the school district to cover E.B.'s tuition during the pendency of this appeal as well. Pls.' Mot. at 20; Def.'s Mot. at 13–14. Yet the plaintiffs "continue to seek any residual tuition reimbursement." Pls.' Mot. at 20.[2] The plaintiffs explain

---

[2] Banks also denied the plaintiffs' request for reimbursement of tuition costs associated with E.B.'s attendance at the Lab School's summer program. AR 14. But the plaintiffs do not seek relief from that denial. Pls.' Reply at 10 n.6.

that they need a judicial order because the defendant's "compliance with this aspect of IDEA is subject to its whim." Pls.' Reply at 11, Dkt. 15. But without any specific allegations as to inadequate or withheld tuition reimbursements, the Court will not award such undefined relief at this stage. Accordingly, the Court will deny the plaintiffs' motion for summary judgment as to residual-tuition costs and grant the defendant's cross-motion on the same.

## CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for Summary Judgment, Dkt. 10, is granted as to the Lab School's status as an appropriate prospective placement for E.B. in the 2023–2024 school year and denied as to the request for unspecified residual-tuition reimbursement, and the defendant's Cross-Motion for Summary Judgment, Dkt. 12, is denied as to E.B.'s prospective placement at the Lab School and granted as to the unspecified reimbursement request. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

October 8, 2025